A. E. WOOD v. MARY U. PEHRSSON, Lottie E. Pehrsson, Gustave Victor E. Pehrsson, Peter Adolfus Johannes Pehrsson, Frederick Daniel Pehrsson, and Mary U. Pehrsson, Executrix of the Last Will and Testament of Gustaveus A. Pehrsson, Deceased.

(130 N. W. 1010.)

**Principal and Agent — Accounting — Presumption — Burden of Proof.**

1. In an action brought to foreclose certain mortgages, defendants, by their answer, expressly admit the execution and delivery by them to plaintiff of such mortgages and notes secured thereby. Such answer by way of defense alleges, in substance, that for several years prior to the date such notes and mortgages were given, plaintiff acted as agent for defendants in various business dealings involving farming and other transactions, and from time to time made certain advancements to them, and received the proceeds of certain grain and stock shipments, and in general took charge of the financial affairs of defendants. That from time to time notes and mortgages were given by defendants, or some of them, to secure loans and advances made by plaintiff, and that such notes and mortgages were executed and delivered without any actual settlement or statement of account between them, but merely for the convenience of the parties and in anticipation of future advances to be made by plaintiff, and that no final or complete accounting or settlement was ever made by the parties. It is further alleged that defendants were unable to keep an accurate account of the numerous transactions aforesaid, and that they relied upon plaintiff so to do, and that consequently they have no means of ascertaining either the actual or approximate indebtedness owing by them to plaintiff. They also allege plaintiff's failure to account for the proceeds of certain real property sold by him as such agent for one of the defendants; also his failure and refusal to account for the proceeds of certain loans which he, as such agent, secured from others for one of the defendants. The answer prays that plaintiff be required to account to defendants for all such transactions. No fraud is alleged.

The proof shows that on July 15, 1903, and at various dates prior thereto, the parties had accountings, at each of which balances were agreed upon, and notes and mortgages executed and delivered by defendants to secure the payment thereof.

*Held,* that, in the absence of fraud or mistake, it will be presumed that such accountings and settlements were fairly made, and that they embraced all prior transactions between the parties.

*Held,* further, that the burden is on defendants to overthrow such presumption, and that they have failed to meet and overthrow the same, or to show that such settlements were erroneous in respect to any item in the account.

**Pleading — Amendment — Discretion.**

2. At or near the close of the trial, which lasted about two weeks, the lower court, over plaintiff's objection, permitted the filing of an amended answer raising new issues.

*Held,* for reasons stated in the opinion, that such ruling was an abuse of discretion.

**Accounting — Review.**

3. On the trial plaintiff accounted for all transactions between the parties which occurred subsequent to the July 15, 1903, settlement, and from a consideration of the testimony it is held that there was a balance due plaintiff on January 1, 1906, of $3,900.97, and that, to the extent of such sum with interest, plaintiff has a lien under the chattel mortgage in suit, and is entitled to a foreclosure thereof, as prayed for in his complaint.

**Insanity — Evidence.**

4. It is contended on behalf of one of the defendants that she was, at the time of signing the notes and mortgages, of unsound mind, and mentally incompetent to enter into a binding obligation. The evidence fails to show that she was "a person entirely without understanding," within the meaning of §§ 4018 and 4019, Rev. Codes 1905, and it is accordingly held that such defense is not established.

**Will — Equitable Conversion.**

5. The real property described in the real estate mortgage in suit was owned, at the time of his death, by one Gustaveus Pehrsson, husband of one of the defendants and father of the others, who died testate in 1895. By the terms of his will his executrix was directed, on or before a certain date, to sell such real property, and to distribute the proceeds among his children.

*Held,* that such provision operated, at the death of the testator, as an equitable conversion of such real property into personalty for the purposes of its administration.

*Held,* further, that, notwithstanding this fact, such mortgage will be treated in equity as an hypothecation by the mortgagors of whatever interests in such estate they possessed at the date of such mortgage, to the extent of the proceeds of such real property.

**Equity — Construction of Instruments — Substance Rather than Form.**

6. Equity looks beyond the mere form of an instrument to its substance, and will consider and give effect, when possible, to the apparent object and purpose of the parties in executing it.

**Dismissal.**

7. As to defendants Peter and Frederick Pehrsson, no cause of action is established, and it is accordingly held that the action, as to them, should be dismissed with costs.

Opinion filed April 1, 1911.

Appeal from District Court, Cass county; *E. B. Goss,* Judge.

Action by A. E. Wood against Mary U. Pehrsson and others. Judgment for defendants, and plaintiff appeals.

Reversed with directions.

*Engerud, Holt, & Frame,* for appellant.

An agreed account cannot be impeached except for fraud, mutual mistake, undue influence, or duress. Montgomery v. Fritz, 7 N. D. 348, 75 N. W. 266; Lay v. Emery, 8 N. D. 515, 79 N. W. 1053; Hendy v. March, 75 Cal. 566, 17 Pac. 702; Klauber v. Wright, 52 Wis. 303, 8 N. W. 893; Christofferson v. Howe, 57 Minn. 67, 58 N. W. 830; Porter v. Price, 26 C. C. A. 70, 49 U. S. App. 295, 80 Fed. 655; Long-Bell Lumber Co. v. Stump, 30 C. C. A. 260, 57 U. S. App. 546, 86 Fed. 574; Chubbuck v. Vernam, 42 N. Y. 432; 1 Cyc. Law & Proc. 454, and note 88.

It is immaterial that the relation between the parties is a fiduciary one. Lay v. Emery, 8 N. D. 515, 79 N. W. 1053; Hoyt v. McLaughlin, 52 Wis. 280, 8 N. W. 889; Philips v. Belden, 2 Edw. Ch. 1; Moses Bros. v. Noble, 86 Ala. 407, 5 So. 181; Paulling v. Creagh, 54 Ala. 647.

Check stub entries made in the ordinary course of buisness, known to be correct at the time, are competent to refresh witness's recollection, and are admissible as independent evidence. 1 Wigmore, Ev. Secs. 735, 736; Raynor v. Norton, 31 Mich. 210; Ætna Ins. Co. v. Weide, 9 Wall. 677, 19 L. ed. 810; Merrill v. Ithaca & O. R. Co. 16 Wend. 586, 30 Am. Dec. 130; Guy v. Mead, 22 N. Y. 462; Woodruff v. State, 61 Ark. 157, 32 S. W. 102; Acklen v. Hickman, 63 Ala. 494, 35 Am. Rep. 54.

*Pierce, Tenneson, & Cupler, Robert M. Pollock,* and *S. G. More,* for respondents.

Courts are liberal in allowing amendments. Martin v. Luger Furniture Co. 8 N. D. 220, 77 N. W. 1003; Stringer v. Davis, 30 Cal. 318; Smith v. Yreka Water Co. 14 Cal. 202; Kerr v. Grand Forks, 15 N. D. 294, 107 N. W. 197; Hayden v. Hayden, 46 Cal. 332; Bigelow v. Draper, 6 N. D. 152, 69 N. W. 570; Rae v. Chicago, M. & St. P. R. Co. 14 N. D. 507, 105 N. W. 721; 1 Enc. Pl. & Pr. pp. 485, 500; Anderson v. First Nat. Bank, 5 N. D. 80, 64 N. W. 114; 1 Am. & Eng. Enc. Law, p 757; Wyatt v. Sweet, 48 Mich. 539, 12 N. W. 692, 13 N. W. 525.

Fisk, J. This litigation arose in the district court of Cass county, and the action is one to foreclose two certain mortgages, one a chattel mortgage dated July 26, 1905, given by defendant Mary U. Pehrsson, to secure the payment to plaintiff of the sum of $6,077.28 and interest, and the other a real estate mortgage dated January 27, 1905, given by defendants Mary U., Lottie, and Gustave Victor Pehrsson, to secure the payment to plaintiff of the sum of $5,077.28 and interest; the latter sum being a portion of the indebtedness secured by such chattel mortgage, and all of such indebtedness being represented by numerous promissory notes, some of which were executed by Mary U. Pehrsson alone, and others by her and the other two defendants above named. The complaint is in the usual form. All of the defendants, with the exception of Lottie, answered together, expressly admitting the execution and delivery of the notes and mortgages described in the complaint. Such answer then alleges, by way of defense, substantially the following facts:

That defendant Mary U. Pehrsson is the widow of one Gustaveus A. Pehrsson, who died in 1895, and the defendants Lottie, Gustave Victor, Peter Adolphus, and Frederick Daniel are the children of Mary U. and Gustaveus, aforesaid. That the said Gustaveus A. Pehrsson died testate, designating as executrix of his last will and testament the said Mary U. Pehrsson. That about the year 1901, the plaintiff was duly appointed guardian of said children, who were at that time minors, and that he is still guardian of the defendant Frederick, the other children having arrived at majority; that among the

property devised by the will of Gustaveus to the said children is a farm consisting of about 800 acres, in Cass county.

The answer further alleges that defendant Mary U. Pehrsson is of Swedish nationality, and unskilled and inexperienced in the practical affairs of farming and the transaction of general business, and that from the date plaintiff was thus appointed guardian of the children, and for four or five years thereafter, he assumed to act for the said Mary U. Pehrsson in the numerous and various transactions of operating said farm, and in probating the estate of the said Gustaveus, deceased, and that during all such time he acted as an adviser and friend for the said Mary U. Pehrsson and her children, and that, relying upon his honesty and integrity, Mary reposed unlimited confidence in the said plaintiff, and permitted him to advise with her in all business transactions, and that he was permitted, to a large extent, to handle her financial matters; that, from time to time during said period, plaintiff advanced moneys to the defendant Mary Pehrsson, to assist her in such farming operations, and, to secure the payment of such advances, he, from time to time, took notes and mortgages from her and some of the children, such mortgages covering both chattels and real property belonging to the defendants; and during such period plaintiff was permitted to market the crops grown by defendants, receiving the proceeds thereof, and also the proceeds of sales of stock and other property on said farm belonging to defendants. That plaintiff during said time owned and farmed land in the vicinity of defendants' farm, and frequently used the stock, implements, machinery, and employees of defendants on his said farm, and that he commingled and intermingled to a great extent the crops raised upon the farm of defendants with his own, as well as the proceeds of such crops.

That the several notes and mortgages executed and delivered from time to time by defendants, or some of them, to plaintiff, were thus executed and delivered without any actual settlement or statement of account between the parties, and without any fixed or just consideration, but simply for the general convenience of the parties, and in anticipation of advances to be made by him to the defendants; and they allege that no final and complete accounting or settlement has ever been made between them.

It is then alleged that defendants were unable to keep an accurate account of the numerous transactions between them and the plaintiff,

and that defendants intrusted and relied upon the plaintiff to keep such an account, and defendants alleged that they do not know, nor have they any means of ascertaining, the actual or approximate indebtedness which may exist against them in plaintiff's favor.

It is further alleged that during said time defendant Mary U. Pehrsson conveyed to plaintiff certain property owned by her personally, to be sold by him and accounted for to said defendant; that thereafter he did, in fact, sell said property, but has failed, refused, and neglected to account therefor in any manner.

It is further alleged that in the year 1905 plaintiff assisted the defendant Mary U. Pehrsson, as executrix, in procuring a loan in the sum of $4,000 upon certain of the premises belonging to said estate, and that a large portion of such loan was paid over to the plaintiff, and that he has failed and refused to properly account for the same.

It is further alleged that the defendants Gustave Victor and Lottie E. Pehrsson were never in any manner indebted to the plaintiff in any sum whatever, and that they signed the notes described in the complaint solely as an accommodation for their mother, and that they never received any consideration therefor.

That the defendants Petre and Frederick are in no manner indebted to the plaintiff in any sum whatever, and that as to them said action should be dismissed with costs.

The answer concludes by an allegation that, upon a full, fair, and complete accounting of all the transactions between the parties, it will appear that the defendants are not indebted to the plaintiff in any sum whatsoever. The prayer is that plaintiff be required to account to the defendants, and that, upon such accounting, judgment be entered in favor of the party or parties for such balance as may be found to be due him or them, and for general relief.

The defendant Lottie E. Pehrsson answered separately through her guardian *ad litem,* alleging that, at the time of the execution and delivery of the notes and mortgages described in the complaint, she was and still is of unsound mind and incapable of transacting any business whatsoever. She also alleges that the several promissory notes and mortgages signed by her were thus executed and delivered without any consideration so far as she is concerned.

A reply consisting of a general denial was interposed by the plaintiff, pursuant to the direction of the court.

The issues thus framed were duly brought on for trial on February 15, 1908, and such trial was not concluded until February 29. A great mass of testimony was introduced relating to the status of the account between the parties. As a result of such trial, the court below found and adjudged, among other things, that plaintiff is indebted to the defendants in the sum of $1,234, together with the costs and disbursements, taxed at $514.40, including therein attorneys' fees in the sum of $390, and that all the promissory notes and mortgages described in the complaint be declared null and void, and canceled of record.

The plaintiff, on the contrary, contends that he is entitled to recover against the defendants, as disclosed by the evidence, the sum of $4,565.05 with interest, and that the mortgages described in the complaint be adjudged to be liens upon the property described therein for such sum, and that a judgment in foreclosure be rendered, as prayed for in the complaint.

It is thus apparent that there is a wide disagreement between these parties. The case is here for trial *de novo,* and the printed abstract contains 1,057 pages embracing about 175 exhibits and a great number of items of account, a great many of which are in dispute. Not only this, but the record, as is usual in such cases, contains a great mass of incompetent and irrelevant testimony, as well as much repetition. It is therefore quite apparent that this court cannot in this opinion review in detail the various items of account or the various contentions of the respective parties, and will content itself by a general statement of its conclusions from such examination of the record as it has been able to make.

As we understand appellant's counsel, they do not question respondents' right to an accounting from plaintiff as to all matters unaccounted for, but they insist that the record discloses that on July 15, 1903, the parties had a full, fair, and complete accounting of all transactions prior thereto, and hence that it was error to ignore such accounting and settlement, and to require plaintiff, nearly five years thereafter, to render to defendants an accounting of such prior transactions. Under the issues as they stood at the time such ruling was made, no fraud or mistake, such as would avoid such accounting and settlement, was claimed, but the sole question was whether the notes executed and delivered by Mary U. Pehrsson, or by her, Victor, and Lottie, and secured by the chattel mortgage given by them to the plaintiff on July 15, 1903, were

thus given without regard to the status of the account between the parties, and without any knowledge on defendants' part as to the actual indebtedness then existing. On the last day of the trial, defendants were permitted to interpose what they styled a "supplemental and amended. answer," wherein fraud was charged on plaintiff's part in the various transactions between the parties. We are convinced that it was a palpable abuse of discretion to permit such change in the issues after such a long and expensive trial, especially in view of the very meager proof of fraud contained in the record. We shall therefore dispose of the case upon the pleadings as they stood throughout the trial.

The execution and delivery of the notes and mortgages described in the complaint having been expressly admitted in the answer, it necessarily follows that plaintiff established a prima facie right to the relief prayed for, by the introduction in evidence. of said notes and mortgages, and the burden was cast upon defendants to establish the defensive matters pleaded by them. In other words, the burden was upon defendants to establish that the notes were given as accommodation notes merely, and that they do not represent actual indebtedness due from defendants to plaintiff at the time they were executed and delivered. And this is true, even conceding that plaintiff, during the various transactions between the parties, should be considered as standing in a fiduciary capacity towards defendants. Montgomery v. Fritz, 7 N. D. 348, 75 N. W. 266; Lay v. Emery, 8 N. D. 515, 79 N. W. 1053.

The record discloses that the transactions between these parties commenced in April, 1899, at which time it is conceded that plaintiff loaned to defendant Mary U. Pehrsson the sum of $100, taking her note therefor. The next year she admittedly borrowed from plaintiff the additional sums of $224.20 and $387, giving to plaintiff her promissory notes for such amounts, secured by a chattel mortgage and an assignment of a contract for the purchase of certain real property. So that in the fall of 1900 defendant Mary U. Pehrsson was admittedly indebted to plaintiff in the sum of $711.20 and interest. The evidence discloses that in 1901 many transactions took place between them involving both debits and credits in their account, and that on January 30, 1902, said defendant executed and delivered to plaintiff her note for $766.72, secured by chattel mortgage. This note was no doubt given in lieu of the notes previously executed, and, after deducting the credit of $42 indorsed thereon, represented the amount of the indebted-

ness due plaintiff at its date. That such is the fact is quite satisfactorily made to appear by the evidence, which is too voluminous to relate, but which discloses various settlements made from time to time. This conclusion is corroborated by the conceded fact that about this time Mrs. Pehrsson and her attorney, L. C. Johnson, sought a settlement and adjustment with plaintiff of all differences between them, and she and her said attorney computed the indebtedness to be about $900; and they visited plaintiff's home for the express purpose of paying him the entire sum, taking with them for such purpose the sum of over $1,100. No settlement was effected for reasons not here material to relate. It was shortly after this that Johnson ceased to have any further relations with the parties, and plaintiff assumed to take his place as an advisor and friend of the Pehrssons. Plaintiff continued thereafter to make advances to Mrs. Pehrsson, and to credit her account with various sums received by him up to August 5th of that year, at which time another settlement of the open account was made, and a balance struck in plaintiff's favor of $12.62. Again, on January 3, 1903, a settlement of such open and running account was effected, and there was found to be a balance due plaintiff of $286.58, which was paid by a note for said sum. Again, on July 15, 1903, the parties appear to have arrived at a full and complete settlement of all unsettled matters, as evidenced by Exhibit "N," at which time a balance was found due plaintiff on open account (excluding certain designated items), of the sum of $1,312.50. Said exhibit is in Mrs. Pehrsson's handwriting, and consists of a detailed statement of the various items of debits and credits since the last settlement, and is signed by both her and the plaintiff. Not only this, but two notes were at that time executed and delivered by Mrs. Pehrsson, Victor, and Lottie, to plaintiff, for the exact amount of such balance thus agreed on, and these defendants also at such time executed and delivered to plaintiff their chattel mortgage securing the payment of these and all prior notes given to him. The two notes above mentioned are the notes for $700 and $612.50 respectively, and were postdated April 1 and June 1, 1903, for the evident purpose of equalizing the interest on prior advances. In the light of the evidence showing that these parties agreed upon a stated account between them on July 15, 1903, the presumption must be indulged that such stated account embraces all unsettled transactions up to that date, with the exception of those times expressly mentioned

as not included therein. It cannot be presumed that such settlement was made through any undue influence, fraud, or mistake. On the contrary, it must be presumed that such settlement was the free and voluntary act of the parties, and that the same was understandingly made, until the contrary is established by proof. The burden is on defendants of overcoming such presumption, and this they have failed to do. The fact of the execution and delivery of the notes and mortgages, taken in connection with the evidence of the agreed settlement, is very convincing proof in support of appellant's contention as to the status of the indebtedness on and prior to July 15, 1903, and we shall accept such proof as correct, except to the extent, if any, that defendants may have shown its incorrectness occasioned through mistake or otherwise. There is no sufficient proof of fraud on plaintiff's part, even if fraud were alleged, to substantiate respondents' contention in this respect; nor do we think the proof warrants a finding of any undue influence or duress practised by plaintiff on the defendants or any of them. While Mrs. Pehrsson is of Swedish nationality, and is not very proficient in the English language, we are convinced that she and her sons John and Victor were fully competent to understand the various business transactions between them and the plaintiff, and that they were able to, and did in fact, understand what they were doing in making the various settlements with and in giving to plaintiff the various notes and mortgages referred to in the record.

Respondents contend, however, that appellant has waived his right to rely upon the settlement of July 15, 1903, as prima facie evidence of the status of the account on that date, for the reason, as argued, that a full and complete accounting from the beginning was ordered by the trial court, to which ruling appellant failed to save an exception. The record discloses, however, that at the very commencement of the trial an exception was preserved to the ruling permitting the taking of what was designated preliminary proof upon the question of the right to an accounting at all. We think this was sufficient conceding that an exception was necessary to preserve appellant's rights, but we do not think any exception was necessary. The ruling or order referred to is in no manner binding on this court, which, under the statute, must try the case *de novo* upon the pleadings and evidence offered. The ruling in no respect changed the issues as originally framed by the parties, but such ruling merely amounted to an expression of the views of

the trial court upon the question whether plaintiff's concededly prima facie case had been overthrown so as to cast on him the burden of proving his case, the same as though no settlement had been made. Such conclusion was clearly erroneous and in no manner binding on this court. We shall, therefore, as above stated, assume that the status of the account on July 15, 1903, is as the parties then agreed upon, except in so far as defendants have shown the same to be incorrect as the result of mutual error, oversight, or mistake. Presumptively, therefore, the account on July 15, 1903, as settled, embraces all prior transactions, and on such date defendant Mrs. Pehrsson was indebted to plaintiff in the sum of $3,014.80 and interest, as represented by the six promissory notes described in Exhibit 20, after deducting certain indorsements which concededly should be made thereon.

These notes are the following:

| | |
|---|---|
| One dated January 30, 1902 ..................... | $766.72 |
| One dated April 1, 1902 ..................... | 500.00 |
| One dated May 15, 1902 ..................... | 500.00 |
| One dated January 3, 1903 ..................... | 266.58 |
| One dated April 1, 1903 ..................... | 700.00 |
| One dated June 1, 1903 ..................... | 612.50 |
| | |
| Total, | $3,365.80 |

There are indorsed on the first note the following payments:

| | |
|---|---|
| On January 30, 1902 ..................... | $ 42.00 |
| On April 30, 1902 ..................... | 309.00 |
| | |
| Total | 351.00 |
| | |
| | $3,014.80 |

Leaving a balance, as above stated, of $3,014.80 with interest, presumably due on all of these notes in January, 1905, there being no contention that any payments thereon were made after July 15, 1903.

We have searched the record in vain for any evidence on defendants' part overthrowing the presumption aforesaid arising from the settlement made on July 15, 1903, and the giving of the promissory notes aforesaid. On the contrary, the testimony tends to show that such presumption is in accord with the facts. This conclusion, together with our previously announced holding, that it was error under the circum-

·stances to permit an amendment of the answer, and that the cause must be disposed of on the issues framed by the original pleadings, neces- :sarily operates to materially narrow the controverted questions in the ·case. We will now proceed to consider and determine the true status ·of the account from and after July 15, 1903.

Nothing was paid on any of the notes above described after July 15, 1903, and on January 27, 1905, there was due thereon, with interest, the aggregate sum of $3,841.77. On November 2, 1903, two addi- .tional notes of $500 each were given, and there was due on these notes ·on January 27, 1905, the sum of $1,148.30, making a total sum due ·on said date, as represented by notes, of $4,990.07, instead of $5,077.28, :as claimed by plaintiff. This difference is no doubt caused by plain- :tiff's computing interest on overdue interest, which we have not done.

In order to arrive at the exact sum due plaintiff on January 27, 1905, we must deduct the credit balances found to be due defendants ·on the open account between July 15, 1903, and January 27, 1905, to- .gether with interest on such balances to the latter date. It will serve ·no useful purpose to enter into details relative to the debits and credits in such open account, and we shall merely state our conclusions from the evidence. We find that defendants are entitled to credits for pro- ·ceeds of grain in 1903, in the sum of . . . . . . . . . . . . . . . . .   $6,325.50
.also for the two notes of $500 each, dated November 2, 1903    1,000.00

|  |  |
|---|---|
| Total credits, | $7,325.50 |

We find that plaintiff advanced to and paid out for defend- ants during said year, and subsequent to July 15, sums aggregating . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   $6,399.82

Leaving a credit balance in defendants' favor of . . . . . . . .   $   925.68
Defendants are entitled to interest on this balance from No- vember 1, 1903, to January 27, 1905, being . . . . . . . . . .   $   137.92

making a total credit balance of . . . . . . . . . . . . . . . . . . . .   $1,063.60
In 1904 plaintiff received as proceeds of grain the sum of   $3,730.91
Proceeds of sale of S. W. ¼, section 3 . . . . . . . . . . . . . .   574.31
Defendants are also entitled to credit for the discount on note paid to Red River National Bank . . . . . . . . . . . . . .   218.90

|  |  |
|---|---|
| Total credits due defendants for 1904, | $4,524.12 |

During 1904 defendants should be indebited with sums aggregating .................................................. $4,813.48

Leaving a net balance in plaintiff's favor for 1904 of .... $   289.36
During January and February, 1905, plaintiff made advances aggregating the sum of .................... $   412.76
He should be debited on February 1st with proceeds of loan    1,197.13
After deducting the net balances aforesaid of $289.36 and
    $412.76 ........................................          702.12

it leaves a net balance in defendants' favor of .......... $   495.01
After deducting these net balances of $1,063.60 and
    $495.01 from the amount of such notes, it leaves a balance due thereon of .............................. $3,431.46
Interest thereon to January 1, 1906 .................          377.46
Note given in July, 1905 ...........................         1,000.00
Interest thereon from November 1, to January 1 ........           20.00

    Total face value of all notes on January 1, 1906  $4,828.92
From February 28, 1905, to January 1, 1906, defendants
    should be debited and credited on the open account as
    follows:
To cash advanced with interest ...................... $2,872.93
        Credits
By proceeds of grain and stock ............ $2,757.88
By note given in July ................... 1,000.00    3,757.88

Net balance in defendants' favor .................... $   884.95
Interest thereon to January 1 ......................           43.00

    Total                                            $   927.95
Deducting this sum from the notes leaves a balance due
    plaintiff on January 1, 1906, of .................. $3,900.97
    The transactions between the parties during the years 1906 and 1907
relate wholly to the contract, Exhibit 36, by which contract plaintiff
sold to defendant Mrs. Pehrsson, on the crop payment plan, the N. E.
$\frac{1}{4}$ of section 33. Those transactions are not within the issues in the
case at bar. Hence we are in no way concerned in this litigation with
    21 N. D.—24.

such transactions. Our conclusion from a consideration of the whole
record is that defendants Mary, Lottie, and Victor are indebted to the
plaintiff in the said sum of $3,900.97 with interest thereon from Janu-
ary 1, 1906, at the rate of 12 per cent per annum; that such sum is a
lien upon the property described in the chattel mortgage mentioned in
the complaint, and the plaintiff is entitled to a foreclosure of such chat-
tel mortgage, as prayed for in his complaint.

It is contended in behalf of defendant Lottie E. Pehrsson, that she
was, at all the times mentioned in the complaint, mentally unsound
and incapable of entering into a binding contract. We have duly con-
sidered such defense, and are of the opinion that she has failed to es-
tablish the same. Section 4018, Rev. Codes 1905, provides: "A per-
son entirely without understanding has no power to make a contract of
any kind. . . . ." Section 4019 reads: "A conveyance or other
contract of a person of unsound mind, but not entirely without un-
derstanding, made before his incapacity has been judicially determined,
is subject to rescission as provided in the chapter on rescission of this
Code." Applying these statutory tests, which are merely declarations
of the common-law rule, it is apparent from the testimony that such
defendant had sufficient understanding to enable her to enter into a
binding obligation.

But one other question remains for determination. By the will of
Gustaveus A. Pehrsson, husband of Mary U. Pehrsson and father of
the other defendants, the executrix was directed on or before a certain
date to sell all of his real property, and the proceeds thereof were to be
distributed among the children upon their reaching their majority.
Such provision operated as an equitable conversion of such real prop-
erty into personalty, from the date of the testator's death, for the pur-
pose of its administration.

Penfield v. Tower, 1 N. D. 223, 46 N. W. 413; Hagen v. Sacrison,
19 N. D. 160, 26 L.R.A.(N.S.) 724, 123 N. W. 518. In view of this,
did the defendants who executed the real estate mortgage, by so doing,
hypothecate, as security for this indebtedness, their respective interest
in such estate (to the extent of the proceeds of such real property), what-
ever such interests may be? That such question requires an affirmative
answer is, we think, reasonably clear. Equity looks not to the mere
form of an instrument, but beyond this, to its substance, and to the
apparent object and purpose of the parties in executing it, and will give

effect thereto, when possible, in order to carry out such object and purpose. It is perfectly apparent that these defendants who signed such instrument intended thereby to hypothecate their respective interests in such estate, and this court, in accordance with settled rules of equity jurisprudence, must give effect thereto. Standorf v. Shockley, 16 N. D. 73, 11 L.R.A.(N.S.) 869, 111 N. W. 622, 14 A. & E. Ann. Cas. 1099; Horst v. Dague, 34 Ohio St. 371; Re Ledrich, 68 Hun, 396, 22 N. Y. Supp. 978.

Plaintiff is therefore entitled to judgment against defendants Mary, Lottie, and Victor Pehrsson, as prayed for in the complaint, and in conformity with the views above expressed; but as to the other defendants, no cause of action having been established against them, it is adjudged that the action shall be dismissed with costs. As between the other parties, each shall pay his own costs, except as to the expense of printing the abstract, one half of which may be taxed against the defendants against whom judgment is ordered.

The District Court is directed to vacate the judgment appealed from, and to enter judgment as herein directed.

All concur, except MORGAN, Ch. J., not participating.

Goss, J., being disqualified, did not sit on the hearing of this case, W. C. CRAWFORD, Judge of the Tenth Judicial District, sitting in his place by request.